IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH A. BUGGS, ) | |
| ) | |
| Petitioner, ) | No. C 05-0352 CRB (PR) |
| ) | |
| vs. ) | ORDER DENYING PETITION |
| ) | FOR A WRIT OF HABEAS |
| KATHY MENDOZA-POWERS, ) | CORPUS |
| Acting Warden, ) | |
| ) | |
| Respondent. ) | |
| ) | |

      After a court trial in the Superior Court of the State of California in and for the County of Contra Costa, petitioner was found guilty of inflicting cruel and unusual corporal punishment on a child, Cal. Penal Code § 273d(a). The court also found true an allegation that petitioner personally inflicted great bodily injury on the victim, id. § 12022.7(a). Trial testimony established that petitioner whipped his step-son with an electrical cord and stepped on his arm and hand, causing a fracture of his left wrist. On January 24, 2002, petitioner was sentenced to seven years in state prison – four years for the section 273d offense and three years for the great bodily injury enhancement.

      Petitioner appealed, but the California Court of Appeal affirmed the judgment of conviction and the Supreme Court of California denied review. The state courts also rejected his request for state collateral relief.

Petitioner then filed the instant federal petition for a writ of habeas corpus under 28 U.S.C. § 2254 claiming that there is insufficient evidence to support the great bodily injury enhancement . Per order filed on April 18, 2005, the court found that the petition, liberally construed, stated a cognizable claim under § 2254 and ordered respondent to show cause why a writ of habeas corpus should not be granted. Respondent has filed an answer to the order to show cause and petitioner has filed a traverse.

## FACTUAL BACKGROUND

The California Court of Appeal summarized the facts of the case as follows:

> [Petitioner's] victim was his 11-year-old stepson, who is referred to in the record as "John Doe." On February 4, 2001, Doe was living in Antioch with his mother, Pamela, and [petitioner]. That night, Pamela was at work and Doe was at home with [petitioner] and one of [petitioner's] friends, Sonia. Sonia prepared hamburgers for dinner. She told Doe that he could eat one but that he was also to leave one for Pamela to eat when she came home from work. Doe saw only one hamburger; he ate it and went to bed. At approximately 2:00 a.m., [petitioner] awakened Doe. As Doe awoke, he saw that [petitioner] had an electrical cord in his hand. [Petitioner] ordered Doe, who was wearing only his underwear, to come into the kitchen. [Petitioner] questioned Doe about eating the hamburger. [Petitioner] did not believe what Doe told him and started hitting him with the electrical cord. Doe ran to the front door. [Petitioner] followed. [Petitioner] pushed Doe against the wall, causing Doe to fall on the ground, and resumed hitting him with the electrical cord. When Doe attempted to block the blows with his hands, [petitioner] began to use a longer length of cord to strike Doe on the back.
>
> At some point during the beating, [petitioner] stepped on Doe's left wrist. Doe heard a crack as [petitioner] stepped on it. After [petitioner] stepped on Doe's wrist, he resumed hitting Doe with the cord. Doe testified that [petitioner] struck him with the cord at least 10 times but did not know if [petitioner] hit him as many as 20 times. [Petitioner] eventually allowed Doe to return to bed; however, he later made Doe get out of bed and wait on the couch for his mother to return. The beating occurred on a Sunday night. [Petitioner] kept Doe home from school for two days to soak in salt and rubbing alcohol in the bathtub. On Wednesday, Doe went to school. He told a vice-principal what had happened to him. A police officer then came to school, and a "CPS" worker took him

2

to the hospital. His arm was x-rayed at the hospital; the arm was placed in a splint, which was later replaced by a cast. Dr. Bailey Tong Lee evaluated the x-ray taken of Doe's left wrist on February 7, 2001, and determined that the wrist was fractured. By the time Doe testified at trial on November 28, 2001, he still had scars on his shoulders, arms and chest as a result of the blows struck by [petitioner] on February 4 or 5, 2001.

Antioch Police Officer Rod Garcia interviewed Doe at the hospital on February 7. He saw at least 15 whip marks on Doe's back and more than 50 total marks on various parts of Doe's body. The nature of the wounds indicated that they had been made with a looped cord or a rope. He also noticed that Doe's left wrist was swollen. He looked at Doe's back before testifying in November 2001 and saw "at least" two scars.

[Petitioner] testified in his own defense. He admitted striking Doe with a computer cord on the night of February 4, 2001. He did so after Doe admitted eating a hamburger that was intended for Pamela. He struck Doe several times on the arm, the front of his body and his back. However, he did not recall stepping on Doe's arm or hand. He testified that he struck Doe in order to discipline him and to help him avoid "winding up in a bad place." However, after seeing the kinds of injuries he inflicted, he did not feel that the beating was "justified."

After the trial court found that [petitioner] violated section 273d, the court turned to the great bodily injury enhancement. Because it had not been able to conclude beyond a reasonable doubt that [petitioner] intended to step on Doe's hand, the court stated that it had looked at the question of whether the fact that an injury occurs accidentally during the course of a felony had an impact on whether the enhancement should properly be imposed. The court cited *People v. Guzman* (2000) 77 Cal.App.4th 761 (*Guzman*) for the proposition that the accidental nature of the injury did not affect whether the enhancement was applicable "because the 1995 amendment to [section] 12022.7 deleted the requirement that the defendant act with the intent to inflict the injury." The court then found that the injury to Doe's wrist occurred during the course of the beating. The court specifically determined that the wrist was broken "in the process of steeping on the hand, although I cannot find that was intentional."

The court concluded: "Just so that the record is clear as to what factual findings I'm making on the record, nevertheless that does find that – I find beyond a reasonable doubt that the enhancement of great bodily pursuant to 12022.7(a), that [petitioner] in the commission of the offense, personally inflicted great bodily injury, is true."

People v. Buggs, No. A097986, slip op. at 2-4 (Cal. Ct. App. Feb. 25, 2003).

# DISCUSSION

A.   Standard of Review

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state

court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

B.   Analysis

Petitioner claims there was insufficient evidence to support the trial court's finding that he personally inflicted great bodily injury upon Doe. He specifically claims that there was no evidence that he intended to injure Doe's wrist.

The relevant inquiry on review of a constitutional challenge to the sufficiency of the evidence to support a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The reviewing court "faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear on the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326.

In light of 28 U.S.C. § 2254(d), a federal habeas court applies the standard of Jackson with an additional layer of deference. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). A federal habeas court must ask whether the

operative state court decision reflected an unreasonable application of <u>Jackson</u> to the facts of the case. <u>Id.</u> 1275. A writ may be granted only if the state court's application of the <u>Jackson</u> standard was "'objectively unreasonable.'" <u>Id.</u> at 1275 n.13 (quoting <u>Williams</u>, 529 U.S. at 409).

Under California law, "[a]ny person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." Cal. Penal Code § 12022.7(a). For purposes of section 12022.7, "'great bodily injury' means a significant or substantial physical injury." <u>Id.</u> § 12022.7(f).

Here, the California Court of Appeal found that there was sufficient evidence to support the great bodily injury enhancement under section 12022.7(a). The court specifically found that there was sufficient evidence to support the enhancement "without relying on [the trial court's] statements about the cause of Doe's broken wrist." <u>People v. Buggs</u>, slip op. at 5. The court explained:

> A victim need not "suffer 'permanent,' 'prolonged' or protracted' disfigurement, impairment, or loss of bodily function" in order to support a finding of great bodily injury under section 12022.7, subdivisions (a) and (f). (*People v. Escobar* (1992) 3 Cal.4th 740, 750.) In the case before us, Doe suffered numerous injuries that qualify as "significant" or "substantial." Doe sustained a severe beating that left more than 50 marks on his body two days after [petitioner] inflicted it. Further, more than nine months after [petitioner] inflicted the injuries, Doe still had scars on his shoulders, arms, chest and back. Moreover, Doe's non-wrist-related injuries were at least as severe as – if not more severe than – those suffered by victims in cases where findings of great bodily injury have been upheld. (See *People v. Jaramillo* (1979 98 Cal.App.3d 830, 836 [child suffered "multiple contusions" that caused "swelling and left severe discoloration; injuries "visible the day after infliction to at least two lay persons"]; *People v. Sanchez* (1982) 131 Cal.App.3d 718, 726-727, 734 [teenage victim suffered bruises and swelling on her face and "multiple superficial abrasions and lacerations, primarily on her back and neck"].) In sum, even without considering Doe's broken wrist, substantial evidence

        supports the conclusion that [petitioner] personally inflicted great bodily injury on Doe.

Id. at 5-6.

        The California Court of Appeal also specifically found that there was sufficient evidence to support the enhancement regardless of whether petitioner injured Doe's wrist accidentally, rather than intentionally. The court explained:

> . . . .The fact that the [trial] court could not determine that [petitioner] intentionally stepped on Doe's wrist does not affect its finding that [petitioner] broke Doe's wrist while administering a severe beating with an electrical cord. The latter finding is sufficient to sustain the court's conclusion that [petitioner] personally inflicted great bodily harm on Doe. (*People v. Guzman* (2000) 77 Cal.App.4th 761, 763-764.) In *Guzman*, the defendant was driving with a blood-alcohol level of .10 percent; he made an "unsafe left turn in front of another vehicle. Due to [Guzman's] action, a collision occurred and [Guzman's] passenger, Amy Quinonez, was injured." (*Guzman*, supra, 77 Cal.App.4th at p. 763.) In a court trial, Guzman was convicted of driving under the influence and causing bodily injury to another; the court also found that Guzman had personally inflicted great bodily injury on Quinonez. On appeal, Guzman challenged the latter finding, arguing that he did not personally inflict great bodily injury on Quinonez; rather, the driver of the other car "directly performed the act that caused the injury." (*Id.* at p. 764.) The court of appeal rejected the argument. The court noted that Guzman "turned his vehicle into oncoming traffic." This *volitional act* was the direct cause of the collision and therefore was the direct cause of the injury." (*Ibid.*, italics added.) The court further noted that "the accidental nature fo the injuries suffered does not affect this analysis." (*Ibid.*)
>
> Here, of course, [petitioner's] beating of Doe was a volitional act, similar to Guzman's act of turning into oncoming traffic; and the injury to Doe's wrist occurred as a direct consequence of [petitioner's] decision to beat Doe. For purposes of determining the propriety of a finding that [petitioner] personally inflicted great bodily injury pursuant to section 12022.7, subdivision (a), it is of no consequence if [petitioner] accidentally, rather than intentionally, stepped on Doe's arm in the course pf the beating. (Cf. *Guzman, supra,* 77 Cal.App.4th at 764.)

Id. at 6-7.

        The California Court of Appeal's decision was not objective unreasonable. See Williams, 529 U.S. at 409; Juan H., 408 F.3d at 1275 n.13. The state

7

appellate court reasonably determined that there was ample evidence to support the trial court's finding that petitioner personally inflicted great bodily injury on Doe, even without considering Doe's broken wrist.  In light of the severe and long-lasting scars caused by petitioner whipping Doe with an electrical cord some ten to twenty times, it simply cannot be said that no rational trier of fact could have found that Doe's whipping injuries were significant or substantial. See Jackson, 443 U.S. at 319.  Moreover, this court is bound by the state appellate court's determination that, under California law, it matters not whether petitioner accidentally, rather than intentionally, broke Doe's wrist in the course of the beating.  See Bradshaw v. Richey, 126 S. Ct. 602, 604 (2005) (a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus). Petitioner is not entitled to federal habeas relief on his claim of insufficiency of the evidence.  See 28 U.S.C. § 2254(d).

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

SO ORDERED.

DATED:   June 8, 2006

CHARLES R. BREYER
United States District Judge